M. A. WILSON *et al.* v. THE STATE OF KANSAS.
No. 13,098.  (72 Pac. 517.)

SYLLABUS BY THE COURT.

1. COUNTY ATTORNEY—*Action on Official Bond.* Sureties on the official bond of a county attorney are liable only for such sums of money as their principal may lawfully receive in the discharge of his official duties.

2. ———— *Sureties not Liable for Seed-wheat Collections.* Such sureties are not liable for the default of the county attorney to pay over money by him collected on promissory notes given by needy farmers, under the provisions of chapter 242, Laws of 1895.

Error from Rawlins district court; A. C. T. GEIGER, judge. Opinion filed May 9, 1903. Affirmed in part and reversed in part.

*Dempster Scott,* and *Ellis, Cook & Ellis,* for plaintiffs in error J. H. Chambers and John M. Burton.

*C. C. Coleman,* attorney-general, *J. H. Briney,* county attorney, and *Fred Robertson,* for The State.

The opinion of the court was delivered by

Pollock, J.: This action was brought by the state against M. A. Wilson, as county attorney of Rawlins county, and J. H. Chambers and John M. Burton, sureties on his official bond, to recover money alleged to belong to the state collected by Wilson. Under the provisions of chapter 242, Laws of 1895, entitled "An act to provide seed for the needy farmers," etc., the state furnished Rawlins county seed grain which was sold to the farmers of that county in small amounts, aggregating $2661, the farmers giving their promissory notes for the amount received. A large number of these notes came from the hand of the county treasurer into the possession of Wilson while county attorney, for collection. He collected thereon the sum of $1055.60, and of this amount failed to account for the sum of $791.64, for which amount this action was brought against Wilson, as county attorney, and the sureties on his official bond. As between the state and the county attorney, an agreed statement of facts was made, upon which the case was tried. However, it is expressly stipulated therein that this statement of facts is not binding on the sureties on the bond. There was judgment for plaintiff. Defendants bring error.

As there is no appearance in this court on behalf of the county attorney, Wilson, the judgment against him is affirmed.

Counsel for the sureties on Wilson's bond urge upon

our consideration many grounds of error. We shall consider but one. It is fatal to a recovery and terminates the controversy. The condition of the obligation executed by the sureties reads:

"If the said M. A. Wilson shall well and faithfully perform and execute the duties of the office of county attorney of said county, required of him by law, during his continuance in office by virtue of said election, and shall pay over to the county treasurer of said county all moneys that shall come into his hands by virtue of his office, and deliver to his successor in office, the books, papers and other things belonging to his said office which may be so required by law, then the above obligation shall be void; otherwise to be and remain in full force and effect."

As a general proposition, the obligation of a surety is *strictissimi juris.* The surety has the right to stand upon the letter of his obligation. That defendants, as sureties upon the official bond of Wilson as county attorney of Rawlins county, are liable only for such sums of money as he might lawfully receive by virtue of his office as county attorney is too well settled to admit of argument. (Brandt, Sure. & Guar. § 451; *Cressey v. Gierman et als.,* 7 Minn. 398 [Gil. 316]; *McKee v. Griffin,* 66 Ala. 211; *San Jose v. Welch,* 65 Cal. 358, 4 Pac. 207; *The People v. Cobb,* 10 Colo. App. 478, 51 Pac. 523; *Nolley et al. v. Callaway County Court,* 11 Mo. 447; *People of the State of N. Y. v. Pennock,* 60 N. Y. 421; *Saltenberry v. Loucks,* 8 La. Ann. 95.) The only question, therefore, in this case is, Did the money collected by Wilson upon these notes come into his hands by virtue of his office as county attorney?

Section 5, chapter 242, Laws of 1895, under which the seed was distributed and the notes taken, provided:

"The county commissioners shall take from each

applicant for seed an obligation for the cost of seed furnished to such applicant. . . . The form of such obligation shall be provided by the railroad commissioners; the county commissioners shall collect such obligations and immediately transmit such collections to the state treasurer, who shall indorse the same upon the proper county warrants."

Section 6 provided:

"The board of county commissioners shall receive the sum of two dollars per day for the time actually employed in carrying out the provisions of this act. . . ."

It was thus expressly made the duty of the county commissioners of Rawlins county to collect these notes. If by the commissioners the performance of this duty was delegated to Wilson as county attorney, the risk of the safe performance of such delegated authority rests upon the county commissioners and not upon the sureties on Wilson's official bond.   As there is no provision of law authorizing or requiring the county attorney to collect the notes in question, the assumption of this authority and the attempted performance of such duty by Wilson were purely voluntary acts, not falling within the scope of his official duty.   It therefore follows of necessity that the defendants, as sureties on his official bond, are not liable for his default in the performance of this voluntary act.

The judgment is reversed as to the sureties, Chambers and Burton.

All the Justices concurring.