# Mitchell v. Rice, *pro ami.*

*Bill in Equity by Minor against Register and Sureties on his Bond, and to Set Aside Decree for Fraud.*

(Decided January 21, 1902; rehearing overruled February 11, 1902.)

1. *Bill against register and sureties on his official bond to hold them liable for funds of complainant lost by register, and to vacate decrees fraudulently obtained by register; equity of; demurrer.*—A bill filed by a minor by next friend against the register in chancery and the sureties on his bond, which seeks the ascertainment and enforcement of complainant's interest in a security, consisting of the register's bond, and to vacate decretal orders as fraudulently obtained, in so far as they purport to acquit him and his sureties of responsibility for complainant's money collected by the register for her land, and also to subrogate complainant to the rights of the register in securities given to him by a banker for deposits of complainant's money in his bank, is not wanting in equity, nor subject to demurrer for failure to allege that complainant had leave of the court to file the bill (not being a bill of review), nor because the amount sued for by complainant exceeds the penalty of the register's bond.

2. *Fictitious report by register; fraudulent decree thereon.*—Where the register in chancery, having lost funds in his custody as register by the failure of a bank in which he has deposited

them, conceals that fact from the court and falsely reports that the money has been paid to the party entitled thereto, or her bonded trustee, the decree obtained on such report will be set aside by the chancery court as fraudulent, on a bill afterwards filed by the owner of the money for that purpose, and for the purpose of charging the register and his sureties therewith.

3. *Guardian and ward; how far infant bound by guardian's election of remedies.*—A fruitless proceeding by the guardian of an infant against a trustee for the infant, appointed by the chancery court to receive the infant's money, and the sureties on his bond, will not preclude the infant from proceeding against the register and the sureties on his bond for loss of the money by depositing it in a bank, and for fraudulently reporting that the money had been paid to the trustee.

4. *Same.*—To bind an infant to an election of remedies which will prejudice her interest is not within the scope of a guardian's representative power.

5. *Funds of chancery court; liability of register and his bondsmen for deposit of in bank.*—The register is the proper custodian of money belonging in the chancery court, such as the proceeds of land sold under chancery proceedings, and he and his sureties are bound by the general deposit thereof in a bank, where it is unauthorized by the parties in interest or an order of court.

6. *Surety on register's bond; liability in excess of penalty of bond.* A bill was filed by a minor, by next friend, against the register in chancery, and the sureties on his official bond, seeking to hold them liable for the misappropriation by the register of money in his hands as register, by reason of his having deposited it in bank, and lost it by the failure or the bank, and also seeking to vacate decrees based upon the register's false report that said money had been paid to the trustee for complainant, duly appointed by the court. The evidence showed that said trustee was a brother-in-law of both the register and his surety, who were brothers, and that the trustee was also the banker whose bank had failed. It also appeared that said surety on the register's bond was partly, if not solely, the author of the plan whereby the banker was appointed the trustee to receive complainant's money; that this surety had also paid to the register, from time to time, sums lacking only $1,000 of equalling the amount named as the penalty of the register's bond, such payments having been made to be forwarded to other persons interested in the funds in court; that the surety also knew the contents of the

register's report and acquiesced in that part of it which showed that these payments to other interested parties had been made by the register in his official capacity. *Held*: That such payments would not be taken as discharging *pro tanto* his liability on the register's official bond, nor would his liability be limited only to said sum of $1,000, as the money could not have been applied both in discharge of his official duty and to a secondary liability arising from his default.

APPEAL from Lauderdale Chancery Court.

Heard before Hon. W. H. SIMPSON.

The bill was filed by Ariadne Rice, by next friend, against Robert Andrews and the sureties on his bond as register in chancery, J. J. Mitchell and W. P. Campbell, seeking to charge them for money belonging to complainant, which the register had deposited in the bank of said W. P. Campbell and lost through the bank's failure and to set aside certain decrees based on a fictitious or false report of said register. Complainant was owner of a half interest in certain land. The owners of the other half interest (the Bond children) filed a bill in the chancery court for the sale of said property for division, and the property was sold under orders of court for about $11,000, which went into the hands of the register. The bill showed these facts and the other facts as stated in the opinion. The defendants demurred to the bill on the following grounds: (1) That it was without equity, in that it was a bill of revivor to set aside a decree of the chancery court for fraud; (2) that it appeared to be filed without leave of the court; (3) that the Bond children were not made parties to the bill; (4) that the amount sued for exceeds the penalty of the register's bond, on which the suit is predicated; and (5), by the defendant Mitchell, that he is not shown to have had such connection with the fraudulent transaction complained of as would authorize relief against him. These demurrers were overruled, and on submission on the pleadings and proof the chancellor rendered a decree granting the relief prayed. From this decree the defendant Mitchell appeals.

[Mitchell v. Rice, *pro ami.*]

SIMPSON & JONES, for appellant.—(1)  The bill is demurrable as a bill of revivor in failing to show that application was made for leave to file it.—Code, § 761. (2)  After adjournment of court a decree can be questioned for fraud only by bill of review.—Code, § 84, p. 1220. (3)  The evidence does not show fraud on Mitchell's part.—1 Brick. Dig., p. 742, § 1538; *Cowen v. Jones*, 27 Ala. 317. (4)  In the absence of statute, where an officer deposits official money with a bank of good standing, and the bank, without fault on his part, loses the money, the officer and his sureties are not liable.—Murphree on Official Bonds, § 453; *Wilson v. People*, 22 L. R. A. 449. (5)  Appellee, having prosecuted her claim to judgment against Campbell as trustee, is bound thereby, and cannot now prosecute the claim against the register and his sureties.—Black on Judgments, Vol. 2, p. 632; *Fire Ins. Co. v. Cochran*, 27 Ala. 228; 87 N. Y. 166-67; 135 Mass. 172; 46 N. Y. 354; 18 N. Y. 552; *Foley v. Leva*, 101 Ala. 395; 2 Story's Equity Juris., §§ 1262-63; 6 Am. & Eng. Ency. Law, 250. (6)  An infant is bound by a decree the same as an adult.—Freeman on Judgments, §§ 151, 515; 1 Black on Judgments, §§ 197, 198; *Preston v. Dunn*, 25 Ala. 507; *Hanna v. Sport*, 43 Am. Dec. 132; 2 Modern Equity Practice, § 883. (7)  A court of equity may elect for an infant. Pomeroy's Eq. Juris., § 509; *Goodman v. Winter*, 64 Ala. 410; *Parks v. Parks*, 66 Ala. 326; 10 Am. & Eng. Ency. Law, 659. (8)  Mitchell's liability, if any, is only to the extent of the difference between the penalty of the bond and what he paid the Bond children.—Code, § 3088; *Farrer v. U. S.*, 5 Peters, 373; *Leggett v. Humphreys*, 21 Howard, 69; *Hill v. Rushing*, 4 Ala. 212; *State v. Blakemore*, 7 Heisk. 638. (9)  Surety not bound to force party to suit before making payment where principal has defaulted.—*Martin v. Ellerbe*, 70 Ala. 326, 335; Brandt on Suretyship, § 257; *Jenkins v. Lockard*, 66 Ala. 377; *Stallworth v. Presler*, 34 Ala. 505; *Halsey v. Murray*, 112 Ala. 185; *Saint v. Ledyard*, 14 Ala. 244; Murphree on Official Bonds, § 671; Throop on Public Officers, § 203.

EMMET O'NEAL and JNO. B. WEAKLEY, for appellee. (1)  An original bill in the nature of a bill of review

to vacate a decree for fraud may be filed without leave of court.—*McDonald v. Pearson*, 21 So. Rep. 534; *Stallworth v. Blum*, 50 Ala. 46; *Curry v. Peebles*, 83 Ala. 225; *Ex parte Smith*, 34 Ala. 455; 2 Daniell Chan. Pr., 1584. (2) The proceeding against Campbell by Rice's guardian does not bind Rice.—*Matthews v. Dowling*, 54 Ala. 202; *Kromer v. Friday*, 32 L. R. A. 671, note 1; 6 Am. & Eng. Ency. Law (1st ed.), 253. (3) Mitchell by his conduct is estopped from saying that the payments made to Andrews to be forwarded to the Bond children were on his liability on the bond, rather than a loan to Andrews.—4 Am. & Eng. Cases in Equity, 325; Herman on Estoppel, p. 341, § 330; *Brown v. Wheeler*, 44 Am. Dec. 550. (4) The deposit by Andrews of complainant's money in bank was a loan to the bank, and for its loss Andrews' bond is liable.—*Alston v. State*, 92 Ala. 124; 15 So. Rep. 107; Crim. Code, § 4668; Code 1886, § 3805.

SHARPE, J.—In January, 1888, under a decree of the chancery court defendant Andrews as register in chancery sold for division certain lands from the proceeds of which complainant was entitled to $5,190.80 and Thomas Bond and his three minor children were each entitled to $1,297.70. Prior to February 26, 1890, the purchase money had all been collected by the register who without authority had placed it by general deposits in the private bank of defendant Campbell. Previously an order had been made in the same case which, conditioned upon his giving bond, appointed Campbell trustee for the interested minors with authority to receive their shares of the funds, but he had not accepted the trusteeship or given the required bond. On the last mentioned day the register having reported collection in full another order was made appointing Campbell as trustee to receive the money of all the infants upon his giving bond but he did not accept or give bond under that order. In August, 1890, Campbell and his bank failed financially and the money of complainant and the Bond children became lost to them and to the register. Before his failure Campbell transferred to Andrews certain choses in action as security for the deposit made

[Mitchell v. Rice, *pro ami.*]

of the land moneys. The register's official bond was for only $5,000 and defendants Mitchell and Campbell were the only sureties thereon. Andrews the register and Mitchell were half brothers to each other and they were each brother-in-law to Campbell. The Bond children through their attorneys procured an order for their shares to be paid to their guardian and about February, 1892, made demand on Mitchell for the amount due them. According to Mitchell's testimony which is uncontradicted, he consulted with those attorneys as to whether a payment made by him as surety on the bond without a judgment against him as such would protect him from further liability on the bond and was advised by them that it would, to the extent of the payment. Mitchell testifying as to what then occurred says: "Before I made any payment I went to see Mr. Campbell with reference to his protecting the interest of the other children. I cannot recall the conversation. The purpose I had in view was to protect all the children that had an interest in this fund. I undertook to pay off the Bond children and to get Campbell to qualify as guardian of Ariadne Rice, and to pay off or protect her interest." Following this conference between Mitchell and Campbell, but at whose instance it does not appear, there was in February, 1892, an order of court made appointing Campbell trustee for complainant alone with authority to receive her money on condition that he should give bond as such trustee in a prescribed sum. Pursuant thereto he gave a bond whereupon the register made an order approving the bond and making the appointment absolute. Mitchell tendered most of the amount due the Bond children to their attorneys who directed that he hand the same to the register to be forwarded to the guardian of those children, and accordingly he handed the register from time to time sums amounting in all to about $4,000, covering most of the amount due them with interest. Thereafter the register made payments to appellant to amount of about $2,000 on account of the money so furnished by appellant, though appellant testifies that when he furnished the money he regarded the register as insolvent and that he did not expect it would be repaid. In February, 1893, the register filed a report stating among other things that

pursuant to the court's orders he had paid the sum
due the Bond children to their guardian and that he
on the 2nd of March, 1892, turned over to Campbell, as
trustee for complainant, the sum due her. The pro-
bate court thereafter appointed a guardian for com-
plainant and to him the chancery court ordered Camp-
bell to pay complainant's money. In 1895 on proceed-
ings instituted in the original chancery suit by complain-
ant's guardian to compel a settlement with the guardian
by Campbell it was ascertained that nothing had been
paid Campbell on complainant's account after he quali-
fied as trustee and that he had received of the register
of complainant's money only the general deposits made
in his bank before its failure. In the same proceeding,
and on a report disclosing that fact, made by a register
who had succeeded Andrews in office, a decree was ren-
dered in favor of complainant's guardian and against
Campbell and the sureties on his bond as trustee for the
amount due complainant of the land money with inter-
est. Campbell and his sureties were then insolvent and
that decree was not collectible.

The bill is not subject to the demurrer. It is not a
bill of review but one which seeks the ascertainment and
enforcement of complainant's interest in a security con-
sisting of the register's official bond, and to vacate de-
cretal orders as fraudulently obtained, in so far as they
purport to acquit him and his sureties of responsibility
for complainant's money collected by the register for her
land, and also to subrogate complainant to the rights of
Andrews the register in securities alleged to have been
given him by Campbell on account of deposits of her
money in his bank. For these purposes the bill has
equity as an original bill. Without doubt the orders of
court recognizing the payment by Andrews the register
to Campbell as trustee of complainant's money were pro-
cured by the register's fictitious report of such payment
together with his concealment of the fact that the money
had previously been lost by the bank failure. Such ac-
tion of Andrews by whatever motive prompted,
amounted to a fraud without which the orders assailed
would not have been entered and they were properly va-
cated by the decree in this cause. The vacation of de-

crees fraudulently obtained is within the original juris-
diction of chancery.—*Curry v. Peebles* 83 Ala. 225 *Ex
parte Smith,* 34 Ala. 455.

The fruitless prosecution by compainant's guardian of
proceedings for a settlement by Campbell as trustee does
not preclude complainant from pursuing such remedy
as she would otherwise have had upon the register's
bond. To bind an infant to an election of remedies which
will prejudice her interest is not within the scope of a
guardian's representative power.

The general deposit of the land proceeds in Campbell's
bank amounted to a loan, which being unauthorized
by the parties interested or by any order of court was
an unlawful disposition of these proceeds.—*Alston v.
State,* 92 Ala. 124. The proposition that the register is
a proper custodian of moneys belonging in the chancery
court in a sense that binds his bondsmen for a misap-
propriation of such moneys, is not disputed and is fully
supported by the authority of *Coleman v. Orman,* 60
Ala. 328.

But it is contended for appellant that the money he
furnished to pay the Bond children should be taken as
discharging the *pro tanto* his liability on the register's
official bond, and that because a surety's obligation is
limited by the penalty of his bond, he cannot be held
liable to complainant in excess of the difference between
the sum he so furnished and the penalty of that bond. By
his own testimony it appears appellant was partly if
not solely the author of the plan whereby Campbell
was constituted trustee and ostensibly the recipient in
that capacity of complainant's money. If as he testi-
fies this course was adopted to protect complainant's
interest it is apparent that he contemplated also that
the plan would operate to shift responsibility for that
money from the register, and consequently from him-
self as surety on the register's bond. Assuming the plan
would succeed in these objects it became immaterial to
his interest whether the Bond children were paid by
him as a surety or by the register, and the latter course
must have commended itself to appellant because of
its tendency to avert from his brother the register the
consequences of official delinquency. The double motive
to so shield the register and protect himself would nat-

urally have led appellant to see to the application of his money and to acquaint himself with the register's report of what had been done in furtherance of his plans. It must, therefore, be inferred that he knew the contents of that report and that he acquiesced in, if he did not authorize that part of the report which purports to show the Bond children were paid by the register in his official capacity. The course taken by appellant in delivering the money to the register instead of to the attorneys or guardian of the Bonds is best explainable upon the theory that there was a tacit understanding whereby the register was allowed to make and report the payment as in discharge of his official duty. Such we conclude was the true nature of the transaction and so· assuming it is immaterial whether tht money was furnished the register gratuitously or by way of a loan, for it could not have been applied both in discharge of his official duty and to a secondary liability arising from his default.—*Moore v. Worsham,* 5 Ala. 645.

Let the decree of the chancery court be affirmed.